# EXHIBIT 1




**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
**1200 Ontario Street**
**Cleveland, Ohio 44113**

## Court of Common Pleas

**New Case Electronically Filed: COMPLAINT**
**April 12, 2021 09:16**

By: ANGELA RODRIGUEZ 0074432

Confirmation Nbr. 2225425

SHAVAUGN HENRY

vs.

HILTON MANAGEMENT, LLC

CV 21 946180

**Judge:** SHIRLEY STRICKLAND SAFFOLD

**Pages Filed:** 11

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| SHAVAUGN HENRY<br>14306 Kennerdown Ave<br>Maple Heights, Ohio 44137<br>Plaintiff,<br><br>v.<br><br>HILTON MANAGEMENT, LLC<br>c/o Corporation Service Company<br>50 West Broad Street, Ste 1330<br>Columbus, Ohio 43215<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.<br><br>JUDGE:<br><br><br>**COMPLAINT FOR DAMAGES AND REINSTATEMENT**<br><br>**JURY DEMAND ENDORSED HEREIN** |

Plaintiff, Shavaugn Henry, by and through undersigned counsel, as her Complaint against Defendant, states and avers the following:

## PARTIES AND VENUE

1. Henry is a resident of the City of Maple Heights, County of Cuyahoga, State of Ohio.
2. Hilton Management, LLC ("Hilton") is a foreign limited liability company with its principal place of business located at 100 Lakeside Ave E, Cleveland, Ohio ("Cleveland Location").
3. All of the material events alleged in this Complaint occurred in Cuyahoga County.
4. Therefore, personal jurisdiction is proper over Defendants pursuant to Ohio Revised Code §2307.382(A)(1), (3) and (4).
5. Venue is proper pursuant to Civ. R. 3(C)(3)&(6).
6. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

## FACTS

7. Henry is a former employee of Hilton.
8. Hilton hired Henry as an Assistant Front Office Manager in or around May 2016.





9. During Henry's employment, she was the only African American Assistant Front Office Manager employed by Hilton.

10. In or around July 2018, Henry discovered she was pregnant.

11. Henry disclosed her pregnancy to Hilton.

12. In or around January 2019, Henry requested protected leave under the Family Medical Leave Act for the birth of her child.

13. As of January 2019, Henry worked for Hilton for at least 12 months.

14. As of January 2019, Henry had at least 1,250 hours of service for Hilton during the previous 12 months.

15. As of January 2019, Hilton employed over 50 employees within a 75 mile radius.

16. As of January 2019, Hilton was a covered employer pursuant to the FMLA.

17. As of January 2019, Henry was eligible to utilize FMLA leave.

18. Pregnancy and the birth of a child is an FMLA qualifying condition.

19. As of January 2019, Henry was entitled to utilize FMLA leave for her pregnancy.

20. Hilton approved Henry's use of FMLA leave in January 2019.

21. Beginning in or around January 2019, Henry began using FMLA leave for her pregnancy.

22. On or around April 12, 2019, Henry returned from her FMLA leave.

23. At the time Henry returned from FMLA leave she had used approximately 11 weeks of FMLA leave.

24. On April 12, 2019, Henry learned that Hilton had issued new uniforms and had instated a new uniform policy.

25. Prior to April 12, 2019, Hilton had not provided Henry with a new uniform.

26. Prior to April 12, 2019, Hilton had not informed Henry about the new uniform policy.





27. On April 13, 2019, Hilton contacted Leslie Gesel, a Caucasian front office manager to inform Hilton that Henry would be late that day due to childcare issues.

28. At all times relevant herein, Assistant Front Office Supervisors had a flexible start time and were able to some in at an earlier or later staggered start time as long as there was coverage.

29. The delay in Henry's start time was covered on April 13, 2019.

30. On or around April 13, 2019, Kelly Rose, a Caucasian Human Resources Representative, called Henry and informed Henry that Hilton was suspending Henry because she was late to work and not in uniform on April 13, 2019 ("Suspension").

31. Upon information and belief, Hilton has a progressive disciplinary policy ("Discipline Policy").

32. Upon information and belief, the Discipline Policy calls for escalating levels of discipline for infractions, beginning with a verbal warning, followed by a written warning, and ultimately leading up to termination.

33. Hilton had never issued Henry a verbal warning for alleged attendance issues and uniform violations pursuant to the Discipline Policy.

34. Hilton had never issued Henry a written warning for alleged attendance issues and uniform violations pursuant to the Discipline Policy.

35. Hilton had never issued Henry a final written warning for alleged attendance issues and uniform violations pursuant to the Discipline Policy.

36. Prior to suspending Henry, Hilton never issued any written communication to Henry criticizing Henry's attendance or dress.

37. To the extent Henry had been late to work, it was caused by child care issues with her newborn.





38. To the extent Henry had missed work, such absences would have been covered by FMLA protected leave.

39. Hilton knew that to the extent that Henry had missed work, such absences were covered by FMLA protected leave.

40. As of April 13, 2019, Hilton had not provided Henry with a uniform.

41. Hilton's assertion of attendance and uniform issues did not actually motivate Hilton's decision to suspend Henry.

42. Hilton's assertion of attendance and uniform issues was insufficient to motivate the suspension of Henry.

43. Hilton's assertion of attendance and uniform issues was pretext to suspend Henry.

44. Following Henry's return from FMLA leave, Gesel had reported to work out of uniform.

45. Hilton did not suspend Gesel for reporting to work out of uniform.

46. Following Henry's return from FMLA leave, Gesel repeatedly came into work late due to boxing lessons.

47. Hilton did not suspend Gesel for reporting to work late.

48. Following Henry's return from FMLA leave, Chloe Crawford, a Caucasian Assistant Front Office Supervisor, came to work late due to childcare issues.

49. Hilton did not suspend Crawford for coming in late due to childcare issues.

50. Hilton did not suspend non-African American employees for alleged attendance and uniform issues and uniform violations.

51. On April 19, 2019, Hilton permitted Henry to return to work on a last chance agreement, wherein Hilton would terminate Henry if Henry was late or subsequently called off to work.





52. On or around May 14, 2019, Henry was contacted by her child's daycare and needed to pick up her child and quarantine the child for 24 hours before returning to daycare.

53. Henry informed Sarah Voloschuk, her Caucasian supervisor, that Henry's newborn child was ill and that Henry needed to take May 15, 2019 off to care for her ailing child.

54. Henry's need for time off to care for her ill newborn was protected by the FMLA.

55. Upon information and belief Voloschuk had a duty to inform Hilton about Henry's need to use FMLA leave on May 15, 2019 to care for her newborn child.

56. Upon information and belief Voloschuk did inform Hilton about Henry's need to use FMLA leave on May 15, 2019 to care for her newborn child.

57. On May 17, 2019, Voloschuk called Henry and told Henry that Hilton was suspending her.

58. On May 19, 2019, Voloschuk and Rose informed Henry that Hilton was terminating her employment due to alleged attendance issues.

59. Hilton knew that Henry had an FMLA qualifying reason to miss work on May 15, 2020.

60. To the extent Henry had missed work, such absences would have been covered by FMLA protected leave.

61. Hilton knew that to the extent that Henry had missed work, such absences were due to reasons protected by FMLA leave.

62. Hilton did not terminate non-African American employees with attendance history similar to Henry's.

63. Hilton's assertion of attendance issues did not actually motivate Hilton's decision to terminate Henry.

64. Hilton's assertion of attendance issues was insufficient to motivate the termination of Henry.

65. Hilton terminated Henry based on her race.





66. Hilton terminated Henry based on her FMLA use.

67. Hilton terminated Henry for absences which should have been protected by the FMLA.

68. Hilton's assertion of attendance issues was pretext to terminate Henry.

69. Hilton did not terminate employees who had not made complaints similar to the Harassment Complaint for alleged attendance issues.

70. Hilton's did not proffer a legitimate non-discriminatory reason for terminating Henry.

71. Hilton knowingly terminated Henry's employment.

72. Hilton knowingly took an adverse employment action against Henry.

73. Hilton knowingly took an adverse action against Henry.

74. Hilton intentionally terminated Henry's employment.

75. Hilton intentionally took an adverse employment action against Henry.

76. Hilton intentionally took an adverse action against Henry.

77. Hilton knew that terminating Henry would cause Henry harm, including economic harm.

78. Hilton willfully terminated Henry's employment.

79. Hilton willfully took an adverse employment action against Henry.

80. Hilton willfully took an adverse action against Henry.

81. Upon information and belief, subsequent to Henry's termination, Hilton hired a non-African American to replace Henry.

82. The above facts demonstrate that Hilton engaged in a pattern and practice of race discrimination.

83. The above facts demonstrate that Hilton interfered with Henry's rights under the FMLA.

84. The above facts demonstrate that Hilton retaliated against Henry for her FMLA use.

85. There was a causal connection between Henry's race and Hilton's termination of Henry.

Electronically Filed 04/12/2021 09:16 / / CV 21 946180 / Confirmation Nbr. 2225425 / CLAJB







86. There was a causal connection between Henry's FMLA use and Hilton's termination of Henry.

87. As a direct and proximate result of Hilton's conduct, Henry suffered and will continue to suffer damages.

**COUNT I: RACE DISCRIMINATION IN VIOLATION OF O.R.C. § 4112.01 *et seq.***

88. Henry restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

89. Throughout her employment, Henry was fully competent to perform her essential job duties.

90. Defendants treated Henry differently than other similarly situated employees based on her race.

91. Defendants violated O.R.C. § 4112.02(A) by discriminating against Henry due to her race.

92. In or around October 2019, Salvation promoted the Unknown Caucasian Female

93. On or about March 24, 2020, Defendants terminated Henry without just cause.

94. At all times material herein, similarly situated non-African-American employees were not terminated without just cause.

95. Defendants terminated Henry based on her race.

96. Defendants violated O.R.C. § 4112.01 *et. seq*. when they terminated Henry based on her race.

97. As a result of Defendants' discrimination against Henry in violation of O.R.C. § 4112.02(A), Henry has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Henry to injunctive, equitable, and compensatory monetary relief.

98. As a result of Defendants' discrimination against Henry in violation of O.R.C. § 4112.02(A), Henry has suffered mental anguish and emotional distress, including, but not limited to,





depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

99. In its discriminatory actions as alleged above, Defendants acted with malice or reckless indifference to the rights of Henry, thereby entitling Henry to an award of punitive damages.

100. To remedy the violations of the rights of Henry secured by O.R.C. § 4112.02(A), Henry requests that the Court award her the relief demanded below.

**COUNT II: RETALIATION IN VIOLATION OF THE FMLA**

101. Henry restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

102. During her employment, Henry utilized FMLA leave.

103. After Henry utilized her qualified FMLA leave, Hilton retaliated against her.

104. Hilton retaliated against Henry by terminating her employment.

105. Hilton willfully retaliated against Henry in violation of U.S.C. § 2615(a).

106. As a direct and proximate result of Hilton' wrongful conduct, Henry is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

**COUNT III: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS**

107. Henry restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

108. Pursuant to 29 U.S.C. § 2601 *et seq*., covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

109. Defendants are covered employers under the FMLA.





110. During her employment, Henry and/or her newborn child had an FMLA qualifying medical condition.

111. Henry was eligible to utilize FMLA leave in April and May 2019.

112. Henry was entitled to utilize FMLA in April and May 2019.

113. Defendants terminated Henry's employment for absences that would have been covered by the FMLA.

114. Defendants terminated Henry's employment to interfere with her right to utilize FMLA leave.

115. Defendants unlawfully interfered with Henry's exercise of her rights under the FMLA in violation of Section 105 of the FMLA and section 825.220 of the FMLA regulations.

116. Defendants violated section 825.300(c)(1) of the FMLA and interfered with Henry's FMLA rights when Defendants failed to inform Henry of her rights under the FMLA.

117. As a direct and proximate result of Defendants' conduct, Henry is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs and reasonable attorneys' fees.

**DEMAND FOR RELIEF**

WHEREFORE, Plaintiff Shavaugn Henry demands from Defendants the following:

(a) Issue an order requiring Defendants to restore Henry to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Henry for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;





(c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys fees and non-taxable costs for Henry claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

*/s/ Angela Rodriguez*
Angela Rodriguez (0074432)
Brian D. Spitz (0068816)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax: (216) 291-5744
Email: angela.rodriguez@spitzlawfirm.com
brian.spitz@spitzlawfirm.com





**JURY DEMAND**

Plaintiff Shavaugn Henry demands a trial by jury by the maximum number of jurors permitted.

*<u>/s/ Angela Rodriguez</u>*
Angela Rodriguez (0074432)
Brian D. Spitz (0068816)
**THE SPITZ LAW FIRM, LLC**





**SUMMONS IN A CIVIL ACTION** **COURT OF COMMON PLEAS, CUYAHOGA COUNTY JUSTICE CENTER**
**CLEVELAND, OHIO 44113**

| CASE NO. | | SUMMONS NO. |
|---|---|---|
| CV21946180 | D1 CM | 44147019 |

Rule 4 (B) Ohio Rules of Civil Procedure

# SUMMONS

SHAVAUGN HENRY **PLAINTIFF**
**VS**
HILTON MANAGEMENT, LLC **DEFENDANT**

HILTON MANAGEMENT, LLC
C/O CORPORATION SERVICE COMPANY
50 WEST BROAD STREET, STE 1330
COLUMBUS OH 43215

**You have been named defendant in a sums complaint (copy attached hereto) filed in Cuyahoga County Court of Common Pleas, Cuyahoga County Justice Center, Cleveland, Ohio 44113, by the plaintiff named herein.**

**You are hereby summoned and required to answer the complaint within 28 days after service of this summons upon you, exclusive of the day of service.**

**Said answer is required to be served on Plaintiff's Attorney (Address denoted by arrow at left.)**

**Your answer must also be filed with the court within 3 days after service of said answer on plaintiff's attorney.**

**If you fail to do so, judgment by default will be rendered against you for the relief demanded in the complaint.**

**Said answer is required to be served on:**



**Plantiff's Attorney**

BRIAN D SPITZ
25200 CHAGRIN BOULEVARD, SUITE 200

BEACHWOOD, OH 44122-0000

**Case has been assigned to Judge:**

SHIRLEY STRICKLAND SAFFOLD
**Do not contact judge. Judge's name is given for attorney's reference only.**

**NAILAH K. BYRD**
**Clerk of the Court of Common Pleas**



By________________________________
**Deputy**

**DATE SENT**
Apr 13, 2021

COMPLAINT FILED 04/12/2021



CMSN130

UNITED STATES
POSTAL SERVICE

Date Produced: 04/26/2021

CERTIFIED MAIL SOLUTIONS INC.:

The following is the delivery information for Certified Mail™/RRE item number 9314 8001 1300 3544 5591 80. Our records indicate that this item was delivered on 04/21/2021 at 12:17 p.m. in COLUMBUS, OH 43215. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

CV21946180 / 44147019 / HILTON MANAGEMENT, LLC / 2021-4-28 05:05
Customer Reference Number: Case: CV21946180
Sent To: 50 WEST BROAD STREET, STE 1330 COLUMBUS, OH 43215